No. 13,047.

MAYOR AND COUNCIL OF ALEXANDRIA vs. JAMES A. O'SHEE AND IRA W. SYLVESTER.

51 719
52 2101

### SYLLABUS.

The dedication of the property claimed by defendants, to public use, was made to appear by evidence, conclusive enough to exclude the idea of private ownership.

The property having been laid off, and dedicated to public use, the assessor was without authority to assess it for taxes, and the tax-collector without authority to sell it for taxes.

ON APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Hunter, J.*

*John C. Ryan* and *White & Thornton* for Plaintiffs and Appellees.

*H. H. White* for Defendants and Appellants.

Argued and submitted February 10, 1899.
Opinion handed down February 20, 1899.
Rehearing refused March 20, 1899.

The opinion of the court was delivered by

BREAUX, J.   Plaintiffs sue to annul two tax sales and a conventional sale made by one of the defendants to his co-defendant, on a half interest in the property.   This area of the land is one acre and three quarter acres, situated on the southwestern border of Alexandria.

Plaintiffs aver in their petition, in substance, that Alexander Fulton, in 1814, dedicated to the town, two hundred feet for the public use as a street, known as Tenth Street.

Defendants plead as a bar to plaintiffs' suit, that plaintiffs are estopped from suing, for the reason that the property they seek to recover was twice placed on the assessment roll under the assessment; a sale made by one of the defendants to his co-defendant, of a half to "unknown owner," for the year 1893 and for the year 1894.   The assessment being ample to identify the property, that when the property on this assessment was offered for taxes, plaintiffs remained silent, and permitted the property to be sold for taxes, under which they are its owners.   That they are further estopped, from the fact that for a long series of years, plaintiffs did not object to parties fencing in, and occupying a long strip of the two hundred feet they claim; and that these acts of omission to assert title, negatived any claim on the part of plaintiffs.

This exception was referred to the merits, and thereupon, a plea of prescription was filed, and defendants, in their answer, invoked their possession for a period of over four years, under the following titles:

1.   By the sale under assessment to "unknown owner," April 13th, 1894, to O'Shee, duly recorded.

2.   By tax sale under assessment "to unknown owner," June, 1895, to Sylvester.

3.   By sale of O'Shee to Sylvester, and by sale of undivided one-half interest from Sylvester to O'Shee.

They claim the taxes they have paid and damages.

The town of Alexandria was incorporated, and its area as set forth in the charter of incorporation of that date, measured thirteen arpents front, more or less in front on Red River, with a depth of thirteen arpents, more or less.   Alexander Fulton laid off the town, and it is

claimed by plaintiffs, dedicated the land.  There was a plat of survey referred to in the charter, as on file in the office of the parish judge. That plat is lost.  The plat of survey in evidence shows, that originally, the town was bounded in front by Red River; west by Jackson street; east by Carson street, and on the south and rear by Tenth street; and that there were nine squares measuring from east to west, and the same number measuring from north to south.  The streets all measure about fifty-four feet in width, except Carson street, measuring about one hundred feet.  The blocks, the map in evidence shows, are over two hundred feet square.

One of the witnesses testified that he assisted McCrummins, parish surveyor in 1835, in surveying the town, and that Tenth street, the width of which is in contest here, was two hundred feet wide, and that all the property within the survey was corporation property, dedicated to the town, that it was intended for a street and pleasure ground. The surveyor made a map of his survey, the witness said, and there remains in his possession, a portion taken from the original on which the rear boundary appears as "Commons' 200 feet," as written on the map.

This map was introduced in evidence.

The testimony of this witness is in some particulars corroborated by other testimony.

A Mr. Hilton, a very old gentleman, testified, that he had seen the original map of Alexandria as originally laid off, and that it embraced within its limits, Tenth street, as claimed by plaintiffs.

Plaintiffs called witnesses who denied the rights of the town in general terms.

The judgment was for plaintiffs.

The defendants appealed.

The question of dedication vel non, is the important issue in the case.  Owing to the loss of maps and papers, it was necessary to have recourse to oral testimony to prove their contents.  The plat to which the charter refers, was lost.

The weight of the secondary evidence admitted on account of the loss shows, we think, that Tenth street was two hundred feet in width. and that from the first it was intended that it should have that width, and it was always considered public property, owned by the corporation.

The maps in evidence, and the testimony regarding them, prove, in
46

our judgment, that the town was originally divided into squares and streets, as described in the Bringhurst map in evidence, save that this map does not show an extension of the rear line beyond the fifty-three feet limit claimed by plaintiffs as being the width of Tenth street; but a number of witnesses testified that the street, according to the memory of the oldest inhabitants, embraced the two hundred feet now claimed, and this is, we think, confirmed by the map; sustained by testimony enough, in view of the lost, original map, annexed to the charter of 1818. We think there is force in defendant's theory, that Alexander Fulton, in laying off the town by division into squares of equal dimensions as indicated by the map, found it not possible to keep up the uniformity of the lot, and include the space of land now in contest. For that reason, Tenth street was left with the width claimed, and it was designated on the old maps as "Commons."

In our judgment, the land in contest was owned by the one by whom the town was laid off, and the street was left by him as indicated by the maps; sustained as to their correctness by secondary testimony.

Defendants insist that the plans of a town or city, must distinctly show that the property was appropriated to public uses, and as public places, in order to justify the inference, that the original owner intended to set apart the land for the use of the public.

In the case before us, we think it is reasonably certain, that such was the intention of the original owner. No one has claimed the land. There never was "an unknown" owner of the property since the town was laid off.

The case here is easily differenced, in our view, from the cited case of Crossman vs. Vignaud, 14th La. 173, in which it was held, that an open space was private property that had been used as an alley as public, for upwards of thirty years, but it was not shown to have been designated as such on the plan of the town, or by any destination to public use.

Here we conclude, the maps and the testimony show a designation of intention of leaving the open space at the time for use of the public. Whether it was left open for a side street, pleasure grounds, or commons, the use, as we take it, was for the public, and which right the public have not lost.

This being our view, it remains evident that the assessment of the land was an absolute nullity, and that the title which the tax collector

undertook to place in the name of the defendants was also a nullity, as well as the subsequent sale pleaded by them.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed.